## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **ALLEN R. DYER,** | * | |
| **Plaintiff** | * | |
| **v.** | * | **CIVIL NO. JKB-15-3699** |
| **MARYLAND STATE** | * | |
| **BOARD OF EDUCATION,** *et al.,* | * | |
| **Defendants** | * | |
| | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM

After a nearly two-year administrative process and two unsuccessful trips through the state courts, Allen R. Dyer ("Plaintiff"), a former member of the Howard County Board of Education (the "County Board"), brought an action in this Court for declaratory relief and damages stemming from alleged violations of his due process, equal protection, and First Amendment rights in connection with his removal from office.  Plaintiff named as Defendants the Maryland State Board of Education (the "State Board") and nine of its current and former members in their official and individual capacities (collectively, the "State Defendants").[1] Plaintiff also named Judith S. Bresler, Esq. ("Ms. Bresler") and the law firm of Carney, Kelehan, Bresler, Bennett & Scherr, LLP ("Carney Kelehan"), a limited liability partnership organized under the laws of Maryland (together, the "Carney Kelehan Defendants").[2]

---

[1] The named State Board members are James H. DeGraffenreidt, Jr.; Charlene M. Dukes; Mary Kay Finan; S. James Gates, Jr.; Luisa Montero-Diaz; Sayed M. Naved; Madhu Sidhu; Guffrie M. Smith, Jr; and Linda Eberhart.
[2] Plaintiff ostensibly named the Carney Kelehan Defendants in their official and individual capacities; however, as will be explained below, that distinction is meaningless, because the Carney Kelehan Defendants are not state actors.

Now pending before the Court are motions to dismiss or, in the alternative, for summary judgment, filed by the Carney Kelehan Defendants (ECF No. 5) and the State Defendants (ECF No. 7). The issues have been briefed, and no hearing is required, *see* Local Rule 105.6 (D. Md. 2014). For the reasons explained below, the motions will be reviewed under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure and will be GRANTED.[3]

## I.   *Procedural Background*[4]

Plaintiff was elected in November 2008 to serve a four-year term as one of eight County Board members. (ECF No. 1 ¶ 24.) On June 9, 2011, the County Board enacted a resolution directing its counsel (Ms. Bresler) to prepare and its chairman to execute a request to the State Board to remove Plaintiff from his position, pursuant to Md. Code Ann., Educ. § 3-701(g) (the "Removal Statute"). (ECF No. 3–5.) The Removal Statute authorizes the State Board to remove a County Board member on grounds of immorality, misconduct in office, incompetence, or willful neglect of duty; the statute requires the State Board to deliver notice of the pending removal action to the subject board member and to afford that member an opportunity for a hearing, with the possibility of *de novo* judicial review in the event of an adverse decision. Consistent with the statute, James H. DeGraffenreidt, Jr., then-president of the State Board and one of the named Defendants here, delivered notice to Plaintiff that the County Board had invoked the Removal Statute on grounds of misconduct in office based on allegations that

---

[3] Although the Court finds it unnecessary to review the pending motions under the Rule 56 summary-judgment standard, the Court observes that (1) Plaintiff was clearly on notice of the possibility of conversion, given the manner in which the motions were captioned; and (2) Plaintiff's Rule 56(d) statements, in which he vaguely adverts to "concerns" about unspecified "differences" between certain administrative documents (*see* ECF Nos. 10–1 at 3 & 11–1 at 3), are woefully inadequate. *See* Fed. R. Civ. P. 56(d) (providing that a court may defer or deny a summary-judgment motion where a "nonmovant shows by affidavit or declaration that, *for specified reasons*, it cannot present facts essential to justify its opposition" (emphasis added)); *see also Ahmed v. Salvation Army*, Civ. No. CCB 12-707, 2012 WL 6761596, at *10 (D. Md. Dec. 28, 2012) ("A Rule 56(d) affidavit cannot conclusorily state that additional discovery is required. It must specify 'why facts precluding summary judgment cannot be presented. This includes identifying the probable facts not available and what steps have been taken to obtain these facts.'" (citation omitted)), *aff'd*, 549 F. App'x 196 (4th Cir. 2013) (per curiam).

[4] The facts are recited here as alleged by Plaintiff or as drawn from public records, this being a motion to dismiss. *See Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997).

Plaintiff had (1) repeatedly breached confidentiality, (2) acted unilaterally and undermined the functioning of the County Board, (3) spurned less divisive methods of problem-solving in favor of litigation, and (4) used his position to further his personal litigation and to harass fellow board members and Howard County Public School System ("HCPSS") personnel.  (ECF No. 1–1 at 5-6.)  DeGraffenreidt's notice included examples of the alleged misconduct.  (*Id.* at 7-8.)  Plaintiff requested a hearing, and the State Board—pursuant to Md. Code Ann., State Gov't § 10-205— transferred the case to the Maryland Office of Administrative Hearings (the "Maryland OAH"), where Administrative Law Judge Douglas E. Koteen ("ALJ Koteen") undertook to conduct an evidentiary hearing and draft a proposed decision.  (ECF No. 3–14 at 1-3.)

On August 26, 2011, Plaintiff filed the first of numerous motions challenging the pending removal action.  (*See* ECF No. 3–12 at 2.)  ALJ Koteen denied Plaintiff's motion (*id.* at 30), and Plaintiff filed exceptions before the State Board; the board declined to consider those exceptions (ECF No. 3–8 ¶ 11).  Plaintiff next filed a complaint in the Circuit Court for Howard County, seeking either interlocutory review or a writ of mandamus.  (ECF No. 3–8.)  The circuit court dismissed Plaintiff's action in a single-page order dated March 26, 2012 (ECF No. 3–9), and Plaintiff appealed—but in November 2012, before the Court of Special Appeals of Maryland addressed the matter, Plaintiff lost his reelection bid (ECF No. 3–10 at 1).  Thereafter, the Court of Special Appeals dismissed Plaintiff's appeal as moot, observing that he could not be "removed from a position . . . that he no longer occupie[d]."  (*Id.*)  The Court of Appeals of Maryland denied Plaintiff's subsequent petition for a writ of certiorari.  (ECF No. 3–11.)

While Plaintiff's case wound its way through the Maryland courts, the administrative process moved forward.  Between May 7, 2012, and July 11, 2012, ALJ Koteen presided over a ten-day evidentiary hearing:  Plaintiff appeared *pro se*, while Ms. Bresler—over Plaintiff's

objection—represented the interests of the County Board.  (ECF No. 3–14 at 2-3.)  On December 5, 2012, in a carefully reasoned, ninety-page proposed decision, ALJ Koteen recommended that Plaintiff be removed for committing misconduct in office.  ALJ Koteen looked to Maryland case law for the definition of misconduct:  citing *Resetar v. State Board of Education*, 399 A.2d 225 (Md. 1979), and an opinion by the State Superintendent of Schools,[5] he noted that the term is sufficiently comprehensive to include misfeasance as well as malfeasance and to reach unprofessional acts even where such acts are not inherently wrongful or criminal in nature.  (ECF No. 3–14 at 38-39.)  He then concluded that Plaintiff had committed misconduct by, *inter alia*, breaching the County Board's confidentiality provisions; disclosing a memorandum that the County Board deemed privileged; violating the Family Educational Rights and Privacy Act ("FERPA") of 1974, as amended, 20 U.S.C. § 1232g; and giving improper, unilateral directions to HCPSS personnel and general counsel.  (*Id.* at 82-85.)  The State Board subsequently upheld ALJ Koteen's proposed decision over Plaintiff's forty-nine exceptions (Opinion No. 13-30).  (ECF No. 3–15.)[6]

On June 14, 2013, Plaintiff commenced his second trip through the state courts with a pleading filed in the Circuit Court for Howard County and styled as a "Petition for *De Novo* Review of Adjudication & Removal."  (ECF No. 3–16 at 4.)  But on November 4, 2013 Plaintiff recharacterized his pleading by interlineation as a "Complaint for a Declaratory Judgment Pursuant to a Non-Statutory Administrative Review of an Allegedly Illegal Adjudication."  (*Id.*

---

[5] *See* Md. Code Ann., Educ. § 2-303(b) (providing that the State Superintendent of Schools shall enforce those provisions of the Education Article that fall within his jurisdiction); *cf.* § 2-205(e) (empowering the State Board to "explain the true intent and meaning" of those provisions of the Education Article that fall within its jurisdiction).

[6] The State Board acknowledged that it technically could not remove Plaintiff from office given that he lost his reelection bid months before it announced its decision.  However, the board cited a Maryland exception to the mootness doctrine—the "rules of future conduct" exception—to support its conclusion that it could nevertheless properly retain jurisdiction over the matter.  (ECF No. 3–15 at 5.)  The "rules of future conduct" exception empowers Maryland tribunals to "express [their] views on the merits of a moot case to prevent harm to the public interest."  *Sanchez v. Potomac Abatement, Inc.*, 18 A.3d 100, 104 (Md. Ct. Spec. App. 2011), *aff'd*, 37 A.3d 972 (Md. 2012).

at 1.)[7]  The circuit court understood Plaintiff's request as one for civil relief under the Maryland

Uniform Declaratory Judgment Act ("MUDJA"), Md. Code Ann., Cts. & Jud. Proc. §§ 3-401 *et

seq.*  But the court determined that declaratory relief was improper:  because Plaintiff was no

longer a member of the County Board, "he [could not] be removed from the County Board and

accordingly, his Complaint . . . must be dismissed as moot."  (ECF No. 3–17 at 21.)  The court

added that, by abandoning the *de novo* review mechanism prescribed by the Removal Statute, *see*

Md. Code Ann., Educ. § 3-701(g)(4), Plaintiff failed to exhaust his administrative remedies and

was therefore not entitled to relief under the MUDJA.  (*Id.* at 39.)[8]  The Court of Special Appeals

affirmed on that latter exhaustion ground (ECF No. 3–18), and the Court of Appeals denied

certiorari (ECF No. 3–19).

Having thus repeatedly failed to sway state administrative and judicial authorities,

Plaintiff brought his case to federal court, filing a two-count Complaint requesting declaratory

relief, millions of dollars in damages, and attorney's fees.  (ECF No. 1.)[9]  Both counts are

---

[7] Plaintiff asked the circuit court to declare that the State Board exceeded its authority when it "attempted to
adjudicate the common law crime of misconduct in office" and "attempted to create and adjudicate something called
an 'administrative crime of misconduct in office.'"  (ECF No. 3–17 at 20.)  He also asked for a declaration that
Opinion No. 13-30 was "meaningless, illegal or unlawful, overruled and voided."  (*Id.*)  Plaintiff has asked this
Court to make these same declarations (among others) in the pending action.
[8] Unlike the federal Declaratory Judgment Act, the MUDJA by its terms is subordinated to other, express
mechanisms for relief:  "If a statute provides a special form of remedy for a specific type of case, that statutory
remedy shall be followed in lieu of a proceeding under [the MUDJA]."  Md. Code Ann., Cts. & Jud. Proc.
§ 3-409(b).
[9] Given that this federal lawsuit represents Plaintiff's third trip through a court system, one might reasonably wonder
whether his claims are barred under principles of *res judicata* or collateral estoppel.  In fact, the State Defendants
present such an argument in their brief (though on the basis of quasi-judicial issue preclusion), and the Court has
considered their position.  However, given the nature of the decisions actually rendered in prior proceedings and the
particular claims that Plaintiff asserts in this lawsuit, the Court resolves the pending motions to dismiss on other
grounds and does not reach the State Defendants' preclusion argument.

presented as claims for relief under 42 U.S.C. § 1983[10]:  Count I alleges violations of "Free Speech" and "Due Process," while Count II alleges violations of "Equal Protection."[11]

On February 19, 2016, the State Defendants moved to dismiss or, in the alternative, for summary judgment (ECF No. 3); the State Defendants corrected their motion on February 22, 2016 (ECF No. 7).  The Carney Kelehan Defendants likewise moved to dismiss or, in the alternative, for summary judgment, on February 19, 2016.  (ECF No. 5.)  Plaintiff opposed both motions (ECF Nos. 10 & 11), and Defendants replied (ECF Nos. 14 & 15).  The motions are ripe for adjudication.

## II.    Standard and Scope of Review

A motion under Rule 12(b)(1) challenges the Court's subject-matter jurisdiction to hear a case.  This challenge proceeds "in one of two ways," *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009).  "First, the defendant may contend 'that [the] complaint simply fails to allege facts upon which subject matter jurisdiction can be based.'"  *Id.* (quoting *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982)).  Second, "the defendant can contend . . . 'that the jurisdictional allegations of the complaint [are] not true.'"  *Id.* (alteration in original) (quoting *Adams*, 697 F.2d at 1219).  The first case represents a "facial" challenge, in which the plaintiff enjoys the same procedural protection he would receive under Rule 12(b)(6); the second case represents a

---

[10] "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any . . . person . . . to the deprivation of any rights . . . secured by the Constitution and laws, shall be liable to the party injured . . . ." 42 U.S.C. § 1983.

[11] Plaintiff brings his due process and equal protection claims pursuant to the Fourteenth Amendment and to Article 24 of the Maryland Declaration of Rights.  While the Court has supplemental jurisdiction over Plaintiff's state constitutional claims, *see* 28 U.S.C. § 1367(a), those claims are technically not cognizable through the § 1983 mechanism, as § 1983 authorizes relief only for deprivations of rights secured by federal law.  *See Snider Int'l Corp. v. Town of Forest Heights*, 739 F.3d 140, 145 (4th Cir. 2014), *cert. denied*, 134 S. Ct. 2667 (2014) (mem.).

"factual" challenge, where the Court may look beyond the complaint without converting the motion to one for summary judgment. *Id.*[12]

A motion under Rule 12(b)(6) tests the sufficiency of the complaint. A complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In analyzing a Rule 12(b)(6) motion, the Court views all well-pleaded allegations in the light most favorable to the plaintiff. *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable[.]" *Twombly*, 550 U.S. at 556. Even so, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 555. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (alteration in original) (quoting *Twombly*, 550 U.S. at 555, 557).

As a general proposition, extrinsic evidence does not factor in to the Rule 12(b)(6) equation. However, exhibits attached to the Complaint are treated as incorporated therein. *McDermott v. Nat'l Shipping Co. of Saudi Arabia*, Civ. No. CCB-99-3080, 2000 WL 218377, at *1 (D. Md. Jan. 24, 2000), *aff'd*, 18 F. App'x 120 (4th Cir. 2001) (per curiam). Moreover, even at the pleading stage, the Court "may take judicial notice of matters of public record, including

---

[12] In this case, most of Defendants' arguments implicate the familiar Rule 12(b)(6) framework. However, the State Defendants' Eleventh Amendment argument, addressed in Part III.B, *infra*, is more properly reviewed under Rule 12(b)(1). "Although Eleventh Amendment immunity is not a 'true limit' on a federal court's subject matter jurisdiction, courts in the Fourth Circuit have nonetheless considered Eleventh Amendment questions pursuant to [Rule 12(b)(1)] 'because [they] ultimately challenge[] th[e] Court's ability to exercise its Article III power.'" *Marks v. Dann*, Civ. No. DKC 13-0347, 2013 WL 8292331, at *7 n.2 (D. Md. July 24, 2013) (citations omitted).

As a practical matter, because the State Defendants' Eleventh Amendment argument involves a pure question of law, the Court need not consult extrinsic evidence in evaluating that argument. In a case such as this, the distinction between Rule 12(b)(1) review and Rule 12(b)(6) review is negligible.

court and administrative filings." *Fakhoury v. Great N. Ins. Co.*, Civ. No. WDQ-12-0268, 2012 WL 1554487, at *1 n.1 (D. Md. Apr. 30, 2012). Courts sitting in this Circuit have taken judicial notice of such administrative documents as decisions of the Maryland OAH, *see Smith v. Wash. Suburban Sanitary Comm'n*, Civ. No. DKC 12-0316, 2012 WL 4863399, at *4 n.4 (D. Md. Oct. 11, 2012); employee grievance records, *see Guthrie v. McClaskey*, No. 1:11cv00061, 2012 WL 5494457, at *4 (W.D. Va. Nov. 13, 2012); and Equal Employment Opportunity Commission filings and records, *see Whittington v. N.C. Dep't of Juvenile Justice & Delinquency Prevention*, No. 1:05CV348, 2006 WL 909141, at *1 (W.D.N.C. Apr. 7, 2006).

In this case, Plaintiff attached five exhibits to his Complaint, and the parties appended a plethora of documents to their memoranda. These documents include opinions and orders of the Maryland OAH, the State Board, and state courts, as well as assorted motions that Plaintiff filed (mainly *pro se*) during the prior state proceedings. The Court may properly take notice of these documents, as they are in the public record. However, the Court declines to take notice of certain exhibits appended to Plaintiff's memoranda,[13] including two affidavits by Plaintiff; an affidavit by one Cynthia L. Vaillancourt, a nonparty; and what appears to be the transcript of a blog post titled *Canary in the Coal Mine* and drafted by one Susan Garber, also a nonparty. Such documents fall outside the proper scope of Rule 12(b)(6) review.

---

[13] Plaintiff appended an identical set of exhibits to each of his opposition memoranda. The Court notes that Plaintiff filed each set of exhibits as a single attachment via the Court's CM/ECF electronic docketing system. However, the Court's electronic filing rules specify that, where a single transmission contains more than one document, each document must be added as a *separate* PDF attachment. *See Electronic Filing Requirements and Procedures for Civil Cases (CM/ECF version 6.1)*, at 26 (6th ed. 2013), http://www.mdd.uscourts.gov/publications/forms/Civil %20Manual%20-%206.1%20-%20FINAL.pdf. Plaintiff is DIRECTED to comply with the Court's electronic filing rules in any future proceedings.

### III.   Analysis

#### A.   Declaratory Relief

The Declaratory Judgment Act ("DJA") provides that a federal court *may*—in a case of actual controversy and upon the filing of an appropriate pleading—"declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201(a).  Declaratory relief may be appropriate where a dispute is (1) definite and concrete, *i.e.*, affecting the legal relations of parties with adverse interests; and (2) real and substantial, *i.e.*, amenable to specific, conclusive relief, as opposed to an advisory opinion based on a hypothetical state of facts.  *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007); *see also Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941) ("Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.").  It is settled that "past injury, without more, cannot form the basis for either injunctive or declaratory relief."  *Peter B. v. Buscemi*, C/A No. 6:10-767-TMC, 2013 WL 869607, at *7 (D.S.C. Mar. 7, 2013) (citing *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974); *Green v. Mansour*, 474 U.S. 64, 74 (1985)), *aff'd sub nom. Chip E. v. Buscemi*, No. 15-1039, 2016 WL 1720593 (4th Cir. Apr. 29, 2016) (per curiam).  Even where a genuine, current controversy exists, relief under the DJA is not guaranteed:  the statute has "long been understood 'to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants.'"  *MedImmune, Inc.*, 549 U.S. at 136 (citing *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995)).

Declaratory relief is inappropriate in this case.  Plaintiff invites the Court to declare, *inter alia*, that the removal process (facially and as applied to Plaintiff) violates the First and

Fourteenth Amendments and that the State Board exceeded its authority by "attempt[ing] to administratively adjudicate and enforce the common law crime of misconduct in office" and by "attempt[ing] to create and adjudicate . . . something called an 'administrative crime of misconduct in office.'" (ECF No. 1 at 19-20.)  He also urges the Court to declare Opinion No. 13-30 "meaningless, illegal or unlawful, overruled and voided."  (*Id.* at 20.)  But such declarations would have no concrete remedial effect, because—independent of the state administrative and judicial proceedings—Plaintiff was voted out of office by the Howard County electorate.  The Court certainly has no authority to *reinstate* an ex-official against the will of the voters, even if the removal process somehow violated his rights.[14]  As Judge Louis A. Becker of the Circuit Court for Howard County put it, "the political mechanism for normal and ultimate decision-making as to who holds elected office in our state and county governments . . . finally decided . . . that [Plaintiff] . . . should not be retained in [his] position.  The voters answered: No."  (ECF No. 3–17 at 26.)

Plaintiff bases his demand for declaratory relief on his notion that the removal process "constitutes an ongoing intimidation and suppression of political speech of currently serving duly elected members of local boards of education"; he adds that an "actual and substantial controversy exists between the voters and Defendants" because the removal process "constitutes a nullification of a properly conducted election."  (ECF No. 1 ¶¶ 52-53.)  But Plaintiff has no standing to assert the rights of third-party elected officials or "voters" generally.  *Compare Stahlman v. United States*, 995 F. Supp. 2d 446, 453 (D. Md. 2014) ("A party may assert third-party standing only if she has standing herself."), *and Equal Rights Ctr. v. Abercrombie & Fitch Co.*, 767 F. Supp. 2d 510, 523 (D. Md. 2010) ("The Supreme Court . . . has 'limited [the

---

[14] To be clear, the Court makes no finding that Plaintiff's rights *were* violated:  on the contrary, for the reasons explained in Part III.E, *infra*, the Court concludes that Plaintiff has failed to state a claim for relief.

third-party standing] exception by requiring that a party seeking [such] standing make two additional showings': (1) that the litigant has a 'close' relationship with the third party; and (2) that the third party faces some obstacle to asserting her own right." (quoting *Kowalski v. Tesmer*, 543 U.S. 125, 130 (2004))), *with Duke Power Co. v. Carolina Envtl. Study Grp., Inc.*, 438 U.S. 59, 80 (1978) ("[W]e have declined to grant standing where the harm asserted amounts only to a generalized grievance shared by a large number of citizens in a substantially equal measure.").

In his response to the State Defendants' motion, Plaintiff adds that Defendants' conduct harmed his "professional, political and public reputation," which harm has "continued to this day." (ECF No. 10 at 14-15.) Reputational harm may, under the right circumstances, give rise to a claim for damages—but Plaintiff cannot stake his claim for declaratory relief on past injury alone. Indeed, virtually *all* misconduct can be characterized as having some lingering effect— but if that were enough to implicate the DJA, the Supreme Court's admonition that declaratory relief requires a "substantial controversy, between parties having adverse legal interests, of sufficient immediacy," *Md. Cas. Co.*, 312 U.S. at 273, would be nugatory.[15]

Plaintiff, having lost his reelection bid over three years ago, has no live dispute with Defendants the likes of which the Court may properly redress via the DJA. His demands for declaratory relief will be DENIED.

---

[15] Plaintiff cites *Claridy v. Anderson*, Civ. No. ELH-13-02600, 2015 WL 1022401 (D. Md. Mar. 9, 2015), for the proposition that equitable relief may be available under § 1983 as against a former employer. However, *Claridy* is readily distinguishable on its facts. In that case, although Judge Hollander of this District dismissed most of the plaintiff's claims, she allowed one claim to proceed—namely, the plaintiff's request for an injunction dismissing disciplinary charges that had been filed against her and expunging such charges from her personnel file. Although the plaintiff was no longer employed by the defendant, her tarnished file worked a continuing hardship the likes of which the court was equipped to redress. In this case, by contrast, Plaintiff prays for no particular equitable relief: he simply invites the Court to declare that laws have been broken and rights violated. That is a not a proper use of the DJA where, as here, there is no continuing controversy as between the parties.

## B.   *Eleventh Amendment Immunity*

The Court, having dispensed with Plaintiff's prayer for declaratory relief, turns its attention to his request for damages.  Plaintiff sued the State Board as well as its members (in their official and individual capacities).  With respect to the claims against the board itself and the official-capacity claims against its members, the State Defendants have asserted Eleventh Amendment immunity.

"Under the Eleventh Amendment, 'a State cannot be sued directly in its own name regardless of the relief sought,' absent consent or permissible congressional abrogation.  And for purposes of the Eleventh Amendment, a state official acting in his official capacity is protected from a damages action by the same immunity." *Ballenger v. Owens*, 352 F.3d 842, 844-45 (4th Cir. 2003) (citations omitted).  While Plaintiff brings his federal claims pursuant to § 1983, Congress has not abrogated Eleventh Amendment immunity through that statute.[16]  And while Maryland's General Assembly has waived sovereign immunity with respect to certain classes of tort claims prosecuted in state court, it has expressly declined to extend that waiver to claims brought in federal court.  *See* Md. Code Ann., State Gov't § 12-103(2) (specifying that the Maryland Tort Claims Act does not "waive any right or defense of the State or its units, officials, or employees in an action in a court of the United States . . . including any defense that is available under the 11th Amendment to the United States Constitution"); *see also Dorsey v. Dep't of Pub. Safety & Corr. Servs.*, Civ. No. TDC-14-2568, 2016 WL 1239922, at *5 (D. Md. Mar. 24, 2016) ("Maryland has explicitly denied waiver of Eleventh Amendment immunity.").

---

[16] In fact, § 1983 claims are *never* cognizable against states, state agencies, or state agents acting in their official capacities, regardless whether the defendant state has waived Eleventh Amendment immunity.  *See Lee-Thomas v. Bd. of Educ.*, Civ. No. CBD-08-3327, 2010 WL 2365673, at *3 (D. Md. June 8, 2010) ("A state simply cannot be sued as a 'person' in a 1983 action." (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64 (1989))), *aff'd sub nom. Lee-Thomas v. Prince George's Cty. Pub. Sch.*, 666 F.3d 244 (4th Cir. 2012); *Hanifee v. Bd. of Educ.*, Civ. No. RDB-09-2381, 2010 WL 723772, at *5 (D. Md. Feb. 24, 2010) ("§ 1983 . . . cannot be expanded by the states, and furthermore has never been amended by Congress to make it applicable to damages claims against the states or their agencies.").

Plaintiff's damages claims as against the State Board and its members acting in their official capacities are barred by the Eleventh Amendment and must therefore be DISMISSED.[17]

### C.    Individual Immunities

Although Plaintiff's claims against the State Board and its members in their official capacities must fail on Eleventh Amendment grounds, the Eleventh Amendment does not shield state actors from liability for constitutional torts that they commit in their individual capacities. That said, even if Plaintiff's federal claims had any substantive merit (they do not), the State Board members would be protected under principles of absolute, quasi-judicial immunity or, alternatively, qualified immunity.[18]

### 1.    Absolute, Quasi-Judicial Immunity

The State Defendants contend that the State Board members are immune from Plaintiff's damages claims because they "acted in a manner comparable to a judge when they considered the evidence presented, exercised their independent judgment, and issued a written decision that included findings of fact and conclusions of law."  (ECF No. 3–2 at 8.)

---

[17] The State Defendants additionally argue that the State is the real, substantial party in interest in this action and that the individual-capacity claims against the State Board members should be recharacterized as claims against the State itself (and consequently dismissed on Eleventh Amendment grounds).  As authority, the State Defendants cite *Martin v. Wood*, 772 F.3d 192 (4th Cir. 2014), wherein the United States Court of Appeals for the Fourth Circuit recognized that "allowing an action to proceed simply because the complaint names a state official in his or her individual capacity 'would be to adhere to an empty formalism and to undermine the principle . . . that Eleventh Amendment immunity represents a real limitation on . . . federal-question jurisdiction.'" *Id.* at 195 (quoting *Idaho v. Coeur d'Alene Tribe*, 521 U.S. 261, 270 (1997)).  But as Judge Hollander observed in a recent opinion, *Martin* concerned not a § 1983 claim but rather a claim arising under the Fair Labor Standards Act—whereas the "Supreme Court made clear in *Hafer v. Melo*, 502 U.S. 21, 31 (1991), that § 1983 plaintiffs can pursue claims against state officers in their individual capacities for damages arising from official acts," *Buxton v. Kurtinitis*, Civ. No. ELH-14-2836, 2015 WL 3937930, at *6 (D. Md. June 25, 2015).  The Fourth Circuit has not yet clarified whether *Martin* applies in the § 1983 context, and so the Court declines to dismiss Plaintiff's claims on *Martin* grounds.

[18] The Court is well aware that qualified immunity is unavailable with respect to state constitutional claims, *see Ritchie v. Donnelly*, 597 A.2d 432, 446 (Md. 1991), and that it is an open question in Maryland whether quasi-judicial immunity bars such claims, *see Md. Bd. of Physicians v. Geier*, 123 A.3d 601, 624 n.22 (Md. Ct. Spec. App. 2015).  If and to the extent that the State Board members are *not* immune from Plaintiff's due process and equal protection claims under Maryland constitutional law, those claims fail on their merits, *see* Part III.E, *infra*.

In *Ostrzenski v. Seigel*, the Fourth Circuit explained that, while the "prospect of liability for damages encourages public officials to perform their assignments appropriately," there are situations in which the "threat of liability for damages hinders, rather than advances, the prospects that public officials will perform their duties in the public interest. The special functions of some governmental officials require that they be exempted completely from such liability." 177 F.3d 245, 248-49 (4th Cir. 1999) (citations omitted). These officials include "judges performing judicial acts within their discretion . . . and 'quasi-judicial' agency officials whose duties are comparable to those of judges . . . when adequate procedural safeguards exist." *Id.* at 249; *see also Dukes v. Maryland*, Civ. No. CCB-11-876, 2011 WL 4500885, at *6 (D. Md. Sept. 27, 2011) ("'[Q]uasi-judicial immunity' is extended when (1) the . . . official's functions are similar to those of a judge, (2) a strong need exists for the official to perform essential functions for the public good without fear of harassment and intimidation, and (3) adequate procedural safeguards exist to protect against constitutional deprivations." (citing *Ostrzenski*, 177 F.3d at 249)).

Federal courts have extended quasi-judicial immunity to a wide range of administrative officials performing essentially adjudicative functions. *See, e.g.*, *Butz v. Economou*, 438 U.S. 478, 513-14 (1978) (extending quasi-judicial immunity to federal ALJs); *Mathis v. Goldberg*, 538 F. App'x 310, 311 (4th Cir. 2013) (per curiam) (extending quasi-judicial immunity to state arbitrator); *Richter v. Connor*, 21 F.3d 423, 1994 WL 118011, at *4-5 (4th Cir. 1994) (unpublished table decision) (extending quasi-judicial immunity to medical board members and staff assistants); *Dukes*, 2011 WL 4500885, at *6 (extending quasi-judicial immunity to hearing examiner with the Maryland Department of Labor, Licensing, and Regulation ("DLLR") and to chairperson of the DLLR Board of Appeals); *Traversa v. Ford*, 718 F. Supp. 2d 639, 646-47 (D.

Md. 2010) (extending quasi-judicial immunity to members of the Maryland Commission on Human Relations); *cf. Mua v. Md. Office of the Attorney Gen.*, Civ. No. PJM 14-2070, 2016 WL 1258469, at *10 n.12 (D. Md. Mar. 31, 2016) (declining to grant plaintiff leave to plead claims against individual State Board members and noting that such members "are very likely protected by quasi-judicial immunity").

In overseeing and executing Plaintiff's removal from office, the State Board members performed precisely the type of function that courts have deemed sufficiently judicial so as to warrant the extension of absolute immunity. Much like an Article III judge reviewing the work of an ALJ or a United States Magistrate Judge, the State Board members reviewed ALJ Koteen's proposed decision and issued a thoughtful opinion of their own. In that opinion, they tackled justiciability issues, interpreted statutory language and case law, and applied the law as they understood it to the facts that ALJ Koteen had found. Moreover, the removal process afforded Plaintiff extensive procedural protections. The evidentiary hearing was governed by the contested case provisions of Maryland's Administrative Procedure Act and by the Rules of Procedure of the Maryland OAH,[19] and Plaintiff enjoyed administrative review by the State Board and the right to *de novo* review in the Circuit Court for Howard County, *see* Md. Code Ann., Educ. § 3-701(g)(4).[20] Finally, and crucially, a strong public interest warrants the extension of absolute immunity here. If this Court were to hold that the State Board members are individually amenable to suit on the basis of their adjudicative actions, those members would be much less likely to exercise their discretion under the Removal Statute and similar laws. That would be unfortunate indeed, both because the General Assembly of Maryland entrusted the

---

[19] *See* Md. Code Ann., State Gov't §§ 10-201 *et seq.*; Md. Code Regs. 28.02.01 *et seq.* (*See* ECF No. 3–14 at 3.)

[20] That Plaintiff ultimately chose not to avail himself of the review procedure prescribed by the Removal Statute is of no moment: that a party declines a procedural protection has no bearing on the inherent viability of that protection.

State Board with this critical supervisory responsibility and because, ultimately, local school systems (and the children and families they serve) bear the brunt of any official misconduct.[21]

The State Board members are absolutely immune from Plaintiff's § 1983 claims for damages, and so those claims must be DISMISSED.

### 2.   *Qualified Immunity*

Even if the State Board members were not entitled to absolute, quasi-judicial immunity, the Court would still dismiss Plaintiff's federal claims as against them pursuant to the doctrine of qualified immunity.  "The doctrine protects government officials from liability for civil damages, provided that their conduct does not violate clearly established statutory or constitutional rights within the knowledge of a reasonable person."  *Danser v. Stansberry*, 772 F.3d 340, 345 (4th Cir. 2014); *see also Henry v. Purnell*, 652 F.3d 524, 534 (4th Cir. 2011) ("An official will not be held liable unless '[t]he contours of the right [he is alleged to have violated were] sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" (alterations in original) (citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987))).

---

[21] The Court notes that Plaintiff barely responds to the State Defendants' quasi-judicial immunity argument, proffering vaguely that "constitutional safeguards don't mean anything if jurisdiction of a body purporting to act in a quasi-judicial authority exceeded its authority in question."  (ECF No. 10 at 4.)  Plaintiff then repeats an argument that he has raised at several points throughout the life of his case, *i.e.*, that a 2012 amendment to Article XV, Section 2, of the Constitution of Maryland ("Article XV") somehow diminishes the State Board's authority to remove him for misconduct in office.  Plaintiff's interpretation of the amended constitutional text is flawed:  Article XV provides for automatic suspension and removal of elected officials who are found guilty of certain crimes, but it neither invalidates nor supersedes other removal procedures, such as those invoked in Plaintiff's case.

In advancing his Article XV argument, Plaintiff includes a purported quote from *Hall v. Prince George's County Democratic Central Committee*, 64 A.3d 210 (Md. 2013).  According to Plaintiff, *Hall* construed amended Article XV to "provide for the removal of an elected official *only if, when*, that elected official is found guilty of a felony or a misdemeanor . . . ."  (ECF No. 10 at 6 (emphasis added).)  In fact, *Hall* remarked that amended Article XV "provide[s] for removal of an elected official *who* is found guilty of a felony or misdemeanor . . . ."  64 A.3d at 112 n.2 (emphasis added).  The Court is disturbed by Plaintiff's seemingly unilateral revision to *Hall*, which subtly yet significantly alters the meaning of the excerpt in a way that promotes Plaintiff's misinterpretation of the constitutional text.  While the Court draws no conclusions (now) as to the circumstances giving rise to this troubling error, it nevertheless observes that all counsel owe a duty of candor before the tribunal per Rule 3.3(a) of the Maryland Lawyers' Rules of Professional Conduct and Rule 704 of the United States District Court for the District of Maryland Local Rules (July 1, 2014).

Having scrutinized not only Plaintiff's Complaint and memoranda but also the various state adjudicative documents, the Court has identified no indicia of constitutional violations.  But even if Plaintiff could somehow articulate a cognizable violation, the State Board members would be entitled to qualified immunity:  there is simply no authority that would lead a reasonable board member to infer that removal of a local official for misconduct in office, via a statutory mechanism with extensive procedural protections, nevertheless violates some clearly established federal right.  The constitutionality of the Removal Statute has never been addressed in any reported case:  in fact, the Court has identified no judicial opinions (other than those concerning Plaintiff) wherein the statute is so much as cited.  Given the breadth and flexibility of the qualified immunity doctrine and the fact that it "gives ample room for mistaken judgments," *Malley v. Briggs*, 475 U.S. 335, 343 (1986), the Court has no difficulty applying it here—and for that additional reason, Plaintiff's § 1983 claims for damages as against the State Board members must be DISMISSED.[22]

### D.    *Damages Claims Against the Carney Kelehan Defendants*

Plaintiff's claims as against the Carney Kelehan Defendants mirror his claims as against the State Defendants, as he has ostensibly sued the Carney Kelehan Defendants in both their "official" and their individual capacities.  If the Carney Kelehan Defendants were in fact amenable to suit under § 1983, the analysis the Court has just undertaken with respect to the State Board members would be largely applicable here as well:  the Carney Kelehan Defendants would be entitled to Eleventh Amendment immunity with respect to the official-capacity claims, and they would be entitled to qualified immunity (though perhaps not quasi-judicial immunity,

---

[22] Rather than explaining (with sufficient authority) why qualified immunity should *not* apply, Plaintiff asserts that the State Board members "have no ELEVENTH AMENDMENT [*sic*] qualified immunity since they had fair warning that Plaintiff's freedom of speech and equal protection were being violated."  (ECF No. 10 at 8.)  Setting aside that qualified immunity has nothing whatever to do with the Eleventh Amendment, baldly proclaiming that the members were on notice of unspecified "violations" does not undercut their assertion of qualified immunity.

given the limited nature of Ms. Bresler's involvement in the administrative proceedings) with respect to the individual-capacity claims.  But Plaintiff's claims as against the Carney Kelehan Defendants fail for an even more basic reason:  these Defendants are neither state officials nor even state actors, and so they cannot be sued under § 1983, nor can they be held liable under Article 24 of the Maryland Declaration of Rights.[23]

As noted above, liability under § 1983 will attach only to persons who violate federal rights while acting under color of state law.  A person acts under color of state law "only when exercising power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'"  *Polk County v. Dodson*, 454 U.S. 312, 317-18 (1981) (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)); *see also Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 181 (4th Cir. 2009) ("[P]rivate activity will generally not be deemed state action unless the state has so dominated such activity as to convert it to state action:  Mere approval of or acquiescence in the initiatives of a private party is insufficient." (citations and internal quotation marks omitted)).

Ms. Bresler's role in the removal proceedings here was limited to her representation of the County Board:  she drafted the initial removal request at the board's direction, and she represented the board's interests during the state administrative and judicial proceedings.  Yet it is "well settled that a private attorney does not become a state actor simply by representing a public body." *Freshwater v. Mount Vernon City Sch. Dist. Bd. of Educ.*, No. 2:09-cv-464, 2010 WL 1434314, at *2 (S.D. Ohio Apr. 8, 2010).  In fact, courts have rejected claims of state action

---

[23] Because the Court concludes that the Carney Kelehan Defendants are not state actors, it necessarily concludes that they are not state officials:  consequently, they cannot be held liable for violations of Article 24, which implicates a narrower class of defendants than does § 1983. *See Manikhi v. Mass Transit Admin.*, 758 A.2d 95, 111 (Md. 2000) ("Maryland 'Constitutional provisions have the . . . narrow focus of protecting citizens from certain unlawful acts committed by government officials.  Indeed, *only* government agents can commit these kinds of Constitutional transgressions.'" (quoting *DiPino v. Davis*, 729 A.2d 354, 371 (Md. 1999))); *Ashton v. Brown*, 660 A.2d 447, 464 (Md. 1995) ("[C]onstitutional provisions like Article[] 24 . . . are specifically designed to protect citizens against certain types of unlawful acts by government officials." (citation omitted)).

on facts similar to those of the case at bar.  *See, e.g.*, *Hanifee v. Bd. of Educ.*, Civ. No. RDB-09-2381, 2010 WL 723772, at *7 (D. Md. Feb. 24, 2010) (holding that law firm and attorneys "were not acting 'under color of state law' merely because they provided legal services to [school board]"); *Schied v. Ward*, No. 09-12374, 2009 WL 5171839, at *6 (E.D. Mich. Dec. 22, 2009) (explaining that, where attorney's allegedly unlawful conduct arose in the context of his representation of school district during arbitration proceedings, attorney "never acted under the color of law"); *Horen v. Bd. of Educ.*, 594 F. Supp. 2d 833, 841 (N.D. Ohio 2009) (rejecting plaintiffs' attempt to impute § 1983 liability to attorneys whose sole connection to state government was their provision of legal services to public school system).[24]

In his opposition brief, Plaintiff offers no persuasive authority or argument for extending § 1983 liability to the Carney Kelehan Defendants.  He proposes that these Defendants "exceeded their legal and professional authority while purporting to be counsel to the [County] Board," and he repeats an allegation from his Complaint that Ms. Bresler acted "without legitimate authorization from the . . . Board" and "without statutory authority."  (ECF No. 11 at 2, 13.)  But if that exceptionally dubious proposition were true,[25] it would hardly transform the

---

[24] *Cf. Schultz v. Ashcroft*, 174 F. App'x 534, 538 (11th Cir. 2006) (per curiam) (attorney who represented court-appointed receiver was not state actor); *Lautman v. Village of Saugerties*, No. 1:13-cv-00264 (MAD/CFH), 2014 WL 1653189, at *9 (N.D.N.Y. Apr. 23, 2014) (attorneys acting in "traditional manner, as counsel for . . . [v]illage," were not state actors); *Rajapakse v. Baker Donelson Bearman Caldwell & Berkowitz, P.C.*, No. 13-2328-JDT-DKV, 2013 WL 3992523, at *8 (W.D. Tenn. Aug. 5, 2013) (attorney and law firm that represented municipal utility provider in separate action by plaintiff were not state actors); *Aldrich v. Ruano*, 952 F. Supp. 2d 295, 301 (D. Mass. 2013) (attorney who represented government defendants in prior suit by plaintiff was not state actor), *aff'd*, 554 F. App'x 28 (1st Cir. 2014) (per curiam).

The Court is aware that in *Filarksy v. Delia*, 132 S. Ct. 1657 (2012), the Supreme Court implicitly accepted that a private attorney could be amenable to a § 1983 claim.  But in *Filarsky*, the attorney was hired by a municipality to conduct an investigatory interview of a city employee suspected of misconduct.  During the course of that interview, the attorney ordered the employee to produce certain materials for inspection.  These are not the typical duties of retained counsel:  the *Filarksy* attorney could only interrogate and issue orders to the employee because he was clothed with state power.  It is also worth noting that the *Filarsky* Court deemed the attorney eligible for qualified immunity—eligibility that would undoubtedly apply in the instant case even were the Carney Kelehan Defendants somehow implicated as state actors.

[25] *See* Md. Code Ann., Educ. § 4-104 (authorizing county boards of education to retain counsel for representation in legal matters that affect them).

19

Carney Kelehan Defendants into state actors.  On the contrary, if Ms. Bresler's actions were somehow *ultra vires* and inconsistent with her governmental client's directives, that fact (though not dispositive) would tend to weigh against a finding that she was "clothed with the authority of state law," *Polk County*, 454 U.S. at 317-18 (quoting *Classic*, 313 U.S. at 326).[26]

Plaintiff's proposed expansion of § 1983 liability, if accepted, would significantly increase the litigation exposure for private attorneys with governmental clients and would disincentivize representation of such clients.  That is an unacceptable outcome, and the Court declines to sanction it.  Because the Carney Kelehan Defendants are not state actors, Plaintiff's claims against them must be DISMISSED.[27]

### E.    *Pleading Defects and Plausibility Problems*

Although Plaintiff's claims fail for the reasons outlined in Part III.A–D, *supra*, the claims alternatively fail for noncompliance with the notice-pleading requirements of Rule 8(a) and with the Supreme Court's admonition that a complaint must contain more than an "unadorned, the-defendant-unlawfully-harmed-me accusation" but must instead contain sufficient factual content that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Iqbal*, 556 U.S. at 678.  Immunities aside, the Court cannot—on the basis of this Complaint—draw the reasonable inference that Defendants violated Plaintiff's due process, equal protection, or First Amendment rights.

---

[26] In his terse discussion on state action, Plaintiff relies on *Griffin v. Maryland*, 378 U.S. 130 (1964), but that case actually illustrates the weakness of his position.  In *Griffin*, a deputy sheriff who also served as a private policeman at an amusement park arrested certain protestors.  He wore a sheriff's badge, and he identified himself as a deputy rather than as a park employee; the Court reached the unremarkable conclusion that the deputy's action constituted state action.  In this case, by contrast, neither Ms. Bresler nor any other attorney or agent of Carney Kelehan has acted with anything resembling the *Griffin* deputy's display of state power.

[27] Having so concluded, the Court need not address the Carney Kelehan Defendants' separate contention that Plaintiff's claims are time-barred.

### 1.   *Due Process*

Plaintiff alleges that "Defendants' interpretation and application of Maryland statutes, court opinions, policies and practices, fails to adequately advise, notify, or inform persons threatened with possible removal from . . . office for violation of their requirements." (ECF No. 1 ¶ 47.)  Plaintiff posits that these unspecified "interpretation[s] and application[s]" amount to due process violations under the Fourteenth Amendment and the Maryland Declaration of Rights.   Though Plaintiff's due process claim is vague and conclusory, elsewhere in his Complaint he alleges that the County Board's June 9, 2011, resolution contained insufficient factual content to place him on notice of the charges against him.  (*Id.* ¶ 22.)  Plaintiff raised identical notice objections before ALJ Koteen, the State Board, and the Howard County court, and the Court assumes that Plaintiff's notice objection underlies his due process claim here.

The Fourteenth Amendment prohibits states from "depriv[ing] any person of life, liberty, or property, without due process of law."   Article 24 of the Maryland Declaration of Rights similarly provides that "no man ought to be . . . deprived of his life, liberty or property, but by the judgment of his peers, or by the Law of the land," and the two provisions have been interpreted *in pari materia*, *see Rosa v. Bd. of Educ.*, Civ. No. 8:11-cv-02873-AW, 2012 WL 3715331, at *6 (D. Md. Aug. 27, 2012).   "Due process contains both substantive and procedural components.  Procedural due process prevents mistaken or unjust deprivation, while substantive due process prohibits certain actions regardless of procedural fairness."  *Snider Int'l Corp. v. Town of Forest Heights*, 739 F.3d 140, 145 (4th Cir. 2014), *cert. denied*, 134 S. Ct. 2667 (2014) (mem.).  Plaintiff's notice objection sounds in procedural due process, and so the Court confines its analysis to that component of the doctrine.  Procedural due process requires at bottom "fair notice of impending state action and an opportunity to be heard."  *Id.* at 146.  The notice and

hearing requirements are distinct aspects of procedural due process and are governed by separate standards:  notice, in particular, is an "'elementary and fundamental requirement of due process,' and must be reasonably calculated to convey information concerning a deprivation." *Id.* (quoting *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950)).

Plaintiff has neither alleged sufficient facts nor supplied exhibits that would tend to support his procedural due process claim.  While the County Board's June 9, 2011, resolution was drafted in somewhat broad terms, the July 6, 2011, correspondence from State Board President DeGraffenreidt was more detailed:  it informed Plaintiff about the Removal Statute; it instructed him how he might request a hearing; and it advised him of his right to counsel and to administrative review.  (*See* ECF No. 1–1 at 5-6.)  Appended to President DeGraffenreidt's correspondence was a letter from County Board Chairman Janet Siddiqui, which letter enumerated specific instances of Plaintiff's alleged misconduct.  (*Id.* at 7-8.)  Taken as a whole, the July 6, 2011, correspondence likely placed Plaintiff on such notice of the County Board's accusations as to satisfy procedural due process.  But even assuming *arguendo* that the initial notice was somehow defective, Plaintiff had ample opportunity to learn of the board's allegations and to ready his defense.  As ALJ Koteen recounted,

> after requesting and being provided with the opportunity for discovery, [Plaintiff] failed to pursue any discovery . . . that would have provided him with the County Board's relevant documents . . . at least five months before the commencement of the contested case hearing . . . .  In any event, the County Board provided [Plaintiff] with all of its designated exhibits nearly two months before the hearing began . . . .

(ECF No. 3–14 at 36 n.7.)  Procedural due process requires *reasonable* notice of an impending deprivation:  taking Plaintiff's spare factual allegations as true, and in light of the public record, it is beyond cavil that he received such reasonable notice.[28]

---

[28] Plaintiff raises several additional, extraneous arguments in his memoranda.  Plaintiff does not clearly link these arguments to Defendants' contentions or, for that matter, to his claims pending before this Court.  If and to the

### 2.   Equal Protection

In addition to his due process claim, Plaintiff alleges that Defendants' "interpretation and application" of Maryland law, as applied to Plaintiff and "similarly situated elected officials," violates the Equal Protection Clause of the Fourteenth Amendment and analogous Maryland constitutional law by "denying Plaintiff free speech rights allowed to others in similar situations and other protections of state and federal law."  (ECF No. 1 ¶ 48.)[29]  Plaintiff adds that Defendants have deprived him of his "rights to full and equal participation, as well as his right of access to the courts."  (Id. ¶ 50.)[30]

The Equal Protection Clause "commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons

---

extent that Plaintiff's extraneous arguments have any bearing in this litigation, they most likely relate to his due process claim, and so the Court briefly addresses them here.

First, Plaintiff contends that the removal action was "fatally flawed and prohibited by law" because, as a "local legislator," Plaintiff enjoyed statutory and common-law legislative immunity from civil and criminal actions. (ECF No. 11 at 5.)  Assuming without deciding that school board commissioners are entitled to legislative immunity and that such immunity would have covered Plaintiff's misconduct, his argument nevertheless fails because he was neither prosecuted for a crime nor sued in civil court.  Rather, he was administratively removed from office by a supervisory agency.  Plaintiff cites no authority (and the Court is aware of none) for the proposition that legislative immunity extends to such administrative actions.

Relatedly, Plaintiff asserts that the County Board lacked authority to "adjudicate or prosecute" him for the "common law crime of misconduct in office."  (Id. at 9.)  Elsewhere he asserts that the State Defendants exceeded their authority when they "'removed' Plaintiff based on an ultra vires or illegal effort to create and adjudicate . . . something called an 'administrative crime of misconduct in office.'"  (ECF No. 10 at 24.)  These arguments are red herrings.  The fact that Plaintiff was removed from office due to misconduct does not mean that he was prosecuted for or convicted of a crime, and conviction is no prerequisite to removal under Maryland law.  As the Court of Appeals recognized in construing a statute similar to the Removal Statute at issue here, the term "misconduct" is "sufficiently comprehensive to include misfeasance as well as malfeasance, and . . . includes unprofessional acts even though such acts are not inherently wrongful."  Resetar v. State Bd. of Educ., 399 A.2d 225, 237 (Md. 1979) (citation omitted).

Finally, Plaintiff assails the de novo judicial review mechanism under Md. Code Ann., Educ. § 3-701(g)(4), as incompatible with the separation of powers under Maryland law.  (ECF No. 10 at 12.)  Here, the Court simply observes that the Court of Special Appeals apparently concluded otherwise, holding that Plaintiff was barred from litigating his MUDJA claims in state court precisely because he declined to take advantage of the statutory remedy that was available to him.  (See ECF No. 3–18 at 7.)  This Court has no reason to second-guess the considered judgment of a Maryland appellate court on a matter of Maryland state law, and it declines to do so.

[29] Although Article 24 of the Maryland Declaration of Rights does not contain an equal protection clause, that article has been construed as safeguarding the same rights as the Fourteenth Amendment, including equal protection.  See Hawkins v. Leggett, 955 F. Supp. 2d 474, 496 (D. Md. 2013), aff'd sub nom. Hawkins v. Leggett (In re Canarte), 558 F. App'x 327 (4th Cir. 2014) (mem.).

[30] This latter contention is preposterous, given that the instant action represents Plaintiff's third lawsuit in relation to his removal from office.  Ample judicial resources have been expended on Plaintiff's claims.

similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (citing *Plyler v. Doe*, 457 U.S. 202, 216 (1982)).  Save for classifications based on certain immutable characteristics (such as race and gender), the "general rule is that legislation is presumed to be valid and will be sustained if the classification drawn . . . is rationally related to a legitimate state interest." *Id.* at 440.

In their brief, the State Defendants contend that Plaintiff's reference to "others in similar situations" is far too amorphous to support an equal protection claim.  (ECF No. 3–2 at 16.) Plaintiff does not respond to this point and so concedes it.  *See Stenlund v. Marriott Int'l, Inc.*, Civ. No. GJH-14-1544, 2016 WL 1203749, at *7 (D. Md. Mar. 22, 2016).  Moreover, according to the State Defendants, Plaintiff was the first elected board member to be removed from office via the Removal Statute.  Assuming that is so, Plaintiff is *de facto* raising a "class-of-one" equal protection claim—contending, in essence, that he was singled out and treated differently from other board members.  The Supreme Court has sanctioned such claims under exceptional circumstances.  *See Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).  However, in *Engquist v. Oregon Department of Agriculture*, 553 U.S. 591, 594 (2008), the Court curtailed the *Olech* doctrine, holding that that the "'class-of-one' theory of equal protection has no place in the public employment context."  Lower courts have extended *Engquist*'s limitation to equal protection claims brought by elected officials like Plaintiff here.  *E.g.*, *Kramer v. County of Contra Costa*, No. C 12-3604 CRB, 2012 WL 6608979, at *3 (N.D. Cal. Dec. 18, 2012); *Zimmerlink v. Fayette County*, Civ. No. 10-237, 2012 WL 5989198, at *7 & n.8 (W.D. Pa. Nov. 29, 2012), *aff'd sub nom. Zimmerlink v. Zapotsky*, 539 F. App'x 45 (3d Cir. 2013); *Blank v. Benzie Cty. Bd. of Comm'rs*, No. 1:10-cv-201, 2012 WL 1085471, at *5 (W.D. Mich. Mar. 30, 2012).

*Engquist* likely bars Plaintiff's ambiguous equal protection claim. But even if his claim survives *Engquist*, his reference to "free speech rights" suggests to the Court that, in reality, he is simply restating his First Amendment theory on equal protection grounds. When litigants employ this strategy, courts "fuse[] the First Amendment into the Equal Protection Clause," *Hardwick ex rel. Hardwick v. Heyward*, 711 F.3d 426, 442 (4th Cir. 2013) (alteration in original) (quoting *R.A.V. v. City of St. Paul*, 505 U.S. 377, 384 n.4 (1992)); *accord Barr v. Lafon*, 538 F.3d 554, 575-76 (6th Cir. 2008). Thus, to whatever extent Plaintiff's equal protection claim *could* be cognizable, it will succeed or fail on the same grounds as his First Amendment claim. But for the reasons explained below, *that* claim is implausible.

### 3.   First Amendment (Freedom of Speech)

Plaintiff alleges that Defendants' "interpretation and application" of Maryland law amounted to unconstitutionally overbroad and vague restrictions on expressive activity and to "content-based and viewpoint-based restrictions on speech." (ECF No. 1 ¶¶ 44-46.) He adds that his removal from office abridged his "affirmative rights to freedom of speech." (*Id.* ¶ 43.) The Court preliminarily observes that, apart from these sweeping legal conclusions, Plaintiff pleads virtually no factual content concerning (1) the speech he engaged in or attempted to engage in or (2) how he was prevented from or punished for speaking. In fact, Plaintiff's only specific reference to potentially expressive activity appears in paragraph 28 of the Complaint, where he cites an August 2011 letter in which his then-attorney recounted that Plaintiff's efforts to "disrupt the *status quo*" had led to "tremendous friction between him and Board Members" and that the removal resolution was "based in part on [Plaintiff's] actions in defending himself" during an ethics investigation. (*Id.* ¶ 28.) Plaintiff neither explains what it means to "disrupt the

*status quo*" nor elaborates on his defensive "actions"; these vague allegations are insufficient to give rise to a plausible inference that Plaintiff's First Amendment rights have been violated.

In his response in opposition to the Carney Kelehan Defendants' motion, Plaintiff proposes that the "factual allegations identifying the bad faith and intention to inhibit Plaintiff's free speech" are contained somewhere within his thirty-two page "Exceptions" to ALJ Koteen's proposed decision.  (ECF No. 11 at 12.)  Plaintiff makes a similar averment in his response to the State Defendants' motion.  (ECF No. 10 at 15.)[31]  But it is neither Defendants' duty nor this Court's obligation to ferret through Plaintiff's "Exceptions" in search of potentially germane factual content and, in essence, to frame his Complaint for him.  *See Wynn-Bey v. Talley*, Civ. No. RWT-12-3121, 2012 WL 5986967, at *2 (D. Md. Nov. 28, 2012) (dismissing a complaint that placed an "'unjustifiable burden on defendants to determine the nature of the claim against them and to speculate on what their defenses might be' and [that] impose[d] a burden on the court to sort out the factual basis of any claims fairly raised" (citation omitted)).  While courts often grant leeway to *pro se* plaintiffs who may legal acumen and who may not understand the federal notice-pleading regime, Plaintiff is himself an attorney, and he is represented by an attorney.  Under these circumstances (and apart from the immunities that stand as a separate and insurmountable bar to recovery), it would be entirely appropriate to dismiss Plaintiff's First Amendment claim for noncompliance with Rule 8(a) and the plausibility principles of *Twombly* and *Iqbal*.

Notice defects aside, and in the interest of a thorough analysis, the Court has undertaken to carefully review ALJ Koteen's proposed decision, as well as State Board Opinion No. 13-30 addressing Plaintiff's exceptions and affirming the ALJ.  The Court accepts, for purposes of this discussion, that certain of ALJ Koteen's stated bases for recommending Plaintiff's removal from

---

[31] In his response to the State Defendants' motion, Plaintiff briefly summarizes certain of his exceptions—but his summaries are of little aid to the Court, as they are themselves mostly vague and conclusory in nature and as many of them have nothing to do with expressive activity.

office related to at least arguably expressive conduct.  The ALJ found that Plaintiff disclosed a memorandum by HCPSS general counsel, in defiance of County Board instructions; that Plaintiff flouted local ethics regulations by leaking materials relating to an ongoing investigation; that Plaintiff violated federal law by disclosing FERPA-protected information to a third party and posting improperly redacted material on a public website; and that Plaintiff breached local protocol by unilaterally directing HCPSS personnel in a manner that contravened County Board policies.  (*See* ECF No. 3–14 at 82-84.)[32]  These types of activities may be expressive in a sense—but they are likely not entitled to First Amendment protection.  In *Garcetti v. Ceballos*, 547 U.S. 410, 419 (2006), the Supreme Court recognized that public employees occupy trusted positions in society:  "[w]hen they speak out, they can express views that contravene governmental policies or impair the proper performance of governmental functions."  The Court then held that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline."  *Id.* at 421; *see also Shenoy v. Charlotte-Mecklenburg Hosp. Auth.*, 521 F. App'x 168, 172 (4th Cir. 2013) ("*Garcetti* 'asked a preliminary question:  was the expression something done pursuant to the employee's professional duties?  If so, then the First Amendment has no application.'" (quoting *Davis v. Cook County*, 534 F.3d 650, 653 (7th Cir. 2008))).  Here, there can be no serious question that most (if not all) of Plaintiff's arguably expressive activities were integrally linked to his membership on the County Board.  For instance, Plaintiff disclosed the legal memorandum via a petition for review that he filed before the State Board in connection with his challenge to a

---

[32] Notably, ALJ Koteen did *not* find (and the State Board did *not* conclude) that Plaintiff committed misconduct when he (1) made "offensive or intimidating comments" to his colleagues and HCPSS personnel; (2) submitted a minority report before the Howard County Council; and (3) filed contentious and costly administrative appeals and lawsuits against the County Board.  (ECF No. 3–14 at 84-85.)  Plaintiff was accorded a wide berth to express his dissenting views, even when such dissention made his colleagues uncomfortable.

County Board copyright policy.  (ECF No. 3–14 at 10.)   He disclosed confidential student information while drafting and later disseminating a dissenting opinion in a bus transportation appeal.  (*Id.* at 15.)   And he unilaterally directed HCPSS employees to take certain actions, representing himself as an authority figure within the school system.[33]   In light of *Garcetti*, such conduct is likely not the kind of conduct for which the First Amendment affords protection from government discipline.

Alternatively, even if *Garcetti* does not stand as a complete bar to Plaintiff's First Amendment claim,[34] that claim would undoubtedly fail under the traditional *Pickering*-type[35] balancing analysis.  *See Durham v. Jones*, 737 F.3d 291, 299 (4th Cir. 2013) (explaining that in assessing a public employee's claim for retaliation in violation of the First Amendment, courts must consider (1) whether the employee was speaking as a citizen on a matter of public concern; (2) if so, whether the employee's interest in speaking on the matter of public concern outweighed the government's interest in managing its working environment; and (3) whether the employee's speech was a substantial factor in the adverse action); *cf. McVey v. Stacy*, 157 F.3d 271, 278 (4th Cir. 1998) ("[A] public employee, who has a confidential, policymaking, or public contact role and speaks out in a manner that interferes with or undermines the operation of the agency, its mission, or its public confidence, enjoys substantially less First Amendment protection than does a lower level employee.").

---

[33] In fact, ALJ Koteen found that Plaintiff gave directives to two employees (the HCPSS general counsel and the technology officer) using modified County Board letterhead and that, in his letter to the technology officer, Plaintiff specifically held himself out as authorized to give such directives under the Education Article of the Code of Maryland.  (*See id.* at 12-14.)

[34]  The Court recognizes that there is some disagreement over the application of *Garcetti* to speech by elected officials (versus nonelected government employees).  *See Werkheiser v. Pocono Township*, 780 F.3d 172, 180-81 (3d Cir. 2015) (collecting cases), *cert. denied*, 136 S. Ct. 404 (2015) (mem.).  The Fourth Circuit has not yet had occasion to address this matter.  But to the extent that an elected official's political speech pursuant to his official duties might be entitled to some First Amendment protection, the Court seriously doubts that such protection would extend to the conduct giving rise to Plaintiff's removal from office in this case.

[35]  *See Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968) ("The problem in any case is to arrive at a balance between the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.").

This is not a case in which Plaintiff breached government protocol to expose corruption or criminal wrongdoing.  Rather, Plaintiff simply disagreed with his colleagues on matters of board governance and local educational policy.  Plaintiff was entitled to disagree, and he was likewise entitled to express his disagreement in a manner consistent with applicable confidentiality rules and ethical guidelines—but he was not entitled to flout those rules and guidelines in a manner that compromised the County Board's effectiveness as a governing institution.  Yet, as ALJ Koteen concluded,

> [Plaintiff's] repeated efforts to act unilaterally without authority from the full Board, and contrary to positions adopted by the Board, interfered with the Board's efficient operations, and the Board's ability to conduct business and serve the best interests of the students of HCPSS. . . . [Plaintiff's] repeated rogue actions made it difficult for the Board to conduct its operations in a fair and orderly manner. . . . [His] failure to respect rules and laws protecting confidentiality and his refusal to comply with positions adopted by the Board with which he disagree[d] . . . undermined the ability of the . . . members to work with him and to rely on his [compliance] with the rules and duties of his position.

(ECF No. 3–14 at 88.)  Nothing in Plaintiff's conclusory Complaint or the extensive public record in this matter leads the Court to conclude any differently.

In closing, the Court hastens to affirm the crucial importance of open political dialogue within our communities and our governing institutions.  *See N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964) (recognizing the "profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open").  There is no question that Plaintiff was entitled to express his ideas and opinions as a citizen; likewise, he was entitled to express his opinions as a member of the County Board.  If Plaintiff believed the board's copyright policies or its views on open meetings or bus transportation (or any other matters) were improper or ill-advised, he had every right to speak his mind:  indeed, the voters of Howard County entrusted him with this important duty when they elected him in 2008.  Nothing in the Court's discussion

here should be taken to disparage the vital role of frank (and sometimes even sharp) political speech by community leaders. *Cf. Bond v. Floyd*, 385 U.S. 116, 135-36 (1966) ("The manifest function of the First Amendment in a representative government requires that legislators be given the widest latitude to express their views on issues of policy.").

But when one serves on a governing body, not as the chief executive or as the ultimate decision-maker but as a member of a team of coequal decision-makers, one is obligated to conform one's conduct to the rules established, collectively, by that governing body. Plaintiff could press for a change in the board's rules, and he could oppose them vigorously if he believed they were misguided. But by simply disregarding the rules and conducting himself as though he were above them, Plaintiff exposed himself to discipline. The First Amendment offers no shelter from the consequences of such behavior. *Cf. Garcetti*, 547 U.S. at 420 ("The Court's decisions . . . have sought both to promote the individual and societal interests that are served when employees speak as citizens on matters of public concern and to respect the needs of government employers attempting to perform their important public functions."); *Connick v. Myers*, 461 U.S. 138, 154 (1983) ("[I]t would indeed be a Pyrrhic victory for the great principles of free expression if the [First] Amendment's safeguarding of a public employee's right, as a citizen, to participate in discussions concerning public affairs were confused with the attempt to constitutionalize the employee grievance[.]").

Plaintiff's First Amendment claim as pleaded falls far short of the notice-pleading requirements of Rule 8(a); and his arguably expressive yet disruptive conduct as a rogue board member is not the sort of conduct that the First Amendment protects.

## IV.   *Conclusion*

Because Plaintiff has not alleged an ongoing controversy of sufficient urgency to warrant declaratory relief; because the State Board and its members are immune from damages in federal court on Eleventh Amendment, quasi-judicial, and qualified immunity grounds; because the Carney Kelehan Defendants are not state actors; and because, in any event, Plaintiff has not pleaded a plausible claim for relief, an Order shall enter GRANTING the pending motions to dismiss (ECF Nos. 5 & 7) and DISMISSING Plaintiff's claims WITH PREJUDICE.

DATED this 19th day of May, 2016.

BY THE COURT:


_____/s/_____
James K. Bredar
United States District Judge
